UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

KHIONDRA MOORE                                              CIVIL ACTION

VERSUS

                                                            23-312-SDD-SDJ

CIRCLE K STORES, INC., AND
ALL UNKNOWN DEFENDANTS

### RULING

This matter is before the Court on the *Motion for Summary Judgment* filed by Defendant, Circle K Stores, Inc. ("Defendant' or "Circle K")[1] Plaintiff, Khiondra Moore ("Plaintiff") filed an *Opposition*[2] to this motion, to which Defendant filed a *Reply*.[3] For the following reasons, the Defendant's motion will be granted.

**I.   FACTUAL BACKGROUND**

Local Rule 56(f) provides:

Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted. **An assertion of fact set forth in a statement of material facts shall be followed by a citation to the specific page or paragraph of identified record material supporting the assertion**. The court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment. **The court shall have no independent duty to search or**

---

[1] Rec. Doc. 10.
[2] Rec. Doc. 13.
[3] Rec. Doc. 14.

> **consider any part of the record not specifically referenced in the parties' separate statement of facts**. (emphasis added).

Local Rule 56 (c) requires an opposing party to:

> submit with its opposition a separate, short, and concise statement of material facts. **The opposing statement shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation as required by this rule**. Each such statement shall begin with the designation "Admitted," "Denied," or "Qualified" and, in the case of an admission, shall end with such designation. The opposing statement may contain in a separately titled section additional facts, each set forth in a separately numbered paragraph and supported by a record citation as required by subsection (f) of this rule.

Plaintiff failed to comply Local Rules 56(c) & (f) of the Middle District of Louisiana. Her Affidavit is not responsive to Defendant's proffered statement of undisputed facts, and Plaintiff's attestations are without citation to record evidence. Plaintiff failed to submit any document wherein she admits, denies, or qualifies Defendant's proffered statements of undisputed fact; thus, they are deemed admitted as not properly controverted under the Local Rules of this Court.

On or about the night of March 20, 2022, Plaintiff alleges that she was completing her shift at the Circle K located on 3373 Florida Boulevard in Baton Rouge at approximately 11 p.m. when the night-shift employee, Janae Walker, arrived for her shift.[4] During the "shift change," the store's service window was temporarily closed to customers.[5] Plaintiff asserts that during this "shift change," when she was still clocked in, working, and being paid by Circle K, a male customer arrived and instigated an altercation with Plaintiff and the other employee.[6] The male customer was "irate" and "started

---

[4] Rec. Doc. 10-3, ¶¶ 3–4.
[5] *Id.* at ¶ 4.
[6] *Id.*

cursing" at Plaintiff and the other employee after he was told he would have to wait until after the shift change for service.[7] Plaintiff then proceeded to stock the shelves in preparation for the next employee.[8]

As Plaintiff was leaving the store, the male customer punched her in the face and pushed her to get inside the store.[9] He then ran inside the store, punched the other employee in the face, fell, got up, and ran out of the store.[10] Both employees then ran into the store, locked the door, and Plaintiff called the manager on the phone.[11] As Plaintiff was calling the manager, the male attacker returned, pulled on the locked door, then punched the glass and opened the door without much force.[12] Plaintiff alleges that, as she was phoning the manager, the male customer continued to physically attack her, hitting her on the head, slinging her to the floor, and beating her.[13] The other employee came to Plaintiff's rescue by striking the male customer on the head with a bottle.[14] As the employees were outside attempting to call the police, the male customer attempted to hit Plaintiff and the other employee with his vehicle.[15] The Baton Rouge City Police arrived shortly after and arrested the male customer.[16]

Plaintiff reported suffering physical and mental injuries from the incident to Circle K management.[17] Circle K forwarded Plaintiff's report to its third-party administrator,

---

[7] *Id.*
[8] *Id.*
[9] *Id.* at ¶ 5.
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] Rec. Doc. 10-5, ¶ 3.

Constitution State Services.[18] A worker's compensation claim was opened, and a claim number and claims handler was assigned.[19] Circle K filed the First Report of Injury with the Office of Worker's Compensation.[20] Circle K's claim handlers have also spoken with and emailed Plaintiff about her worker's compensation claim.[21] The claims handlers have sent her numerous letters about, *inter alia*, her Average Weekly Wage calculations, the suspension, modification, and termination of her indemnity benefits, her Choice of Physician forms, and approvals for doctor's visits and MRIs.[22] As of October 11, 2022, Circle K had paid $13,039.29 in indemnity and medical benefits for Plaintiff's claim in accordance with the Louisiana Workers' Compensation Law.[23] Defendant asserts that Plaintiff's worker's compensation claim is still currently open.[24]

## II.     PARTIES' ARGUMENTS

Defendant argues this is the "quintessential case for workers' compensation immunity"[25] based on Plaintiff's allegations that she was an employee of Circle K, and Circle K was negligent in failing to properly secure its premises, leading to her assault by an angry customer during work hours.[26]  Because Plaintiff's injuries arose directly out of and during her employment with Circle K, as a matter of law, Defendant maintains it is immune from tort liability under the Worker's Compensation statutes.[27]

---

[18] *Id.* at ¶ 4.
[19] *Id.*
[20] *Id.* at ¶ 5.
[21] *Id.*
[22] *Id.*
[23] *Id.* at ¶ 7.
[24] *Id.* at ¶ 8.
[25] Rec. Doc. 10-2, p. 1.
[26] *Id.*
[27] *Id.*; *see also* Rec. Doc. 10-4, ¶¶ 3–5.

Defendant relies on *Bagwell v. Quality Easel Co.* for the proposition that, under Louisiana law, "workers' compensation is the exclusive remedy granted to an employee for a work-related injury caused by a nonintentional act and is exclusive of all claims that might arise against a co-employee or the employer."[28] Defendant further asserts that an employer's statutory immunity "reflects a compromise, whereby the employee—in exchange for the guarantee of fixed workers' compensation benefits that must be paid by the employer for any work-related injury, regardless of fault—gives up the right to bring tort actions against the employer or his coworker."[29]

Thus, Plaintiff's allegations fall squarely under Louisiana Worker's Compensation laws because the basis of her claim is a dispute with a customer that "arose out of and in the course of" the employment at Circle K.[30] Accordingly, her exclusive remedy is Workers' Compensation, and she has asserted no intentional tort claim against Circle K.[31]

Defendant also claims that Plaintiff has alleged nothing that would constitute an exception to workers' compensation tort immunity.[32] In Defendant's view, Plaintiff's core allegation is that the door was insufficiently secure and the premises were not "properly secured for the employees"[33]—an allegation of simple negligence rather than intentional acts that would warrant the exception to immunity under La. Rev. Stat. § 23:1032(B).[34] Defendant also relies on the decision *Elmuflihi v. Central Oil & Supply Corp.* for the

---

[28] Rec. Doc. 10-2, p. 4 (citing *Bagwell* 308 So.3d 354, 359 (La. App. 2d Cir. 2020)).
[29] Rec. Doc. 10-2, p. 4.
[30] *Id.*
[31] *Id.*
[32] *Id.*
[33] Rec. Doc. 10-4, ¶¶ 6–7.
[34] La. Rev. Stat. § 23:1032(B) ("Nothing in this Chapter shall affect the liability of the employer, or any officer, director, stockholder, partner, or employee of such employer or principal to a fine or penalty under any other statute or the liability, civil or criminal, resulting from an intentional act.").

proposition that it is immaterial whether Plaintiff was attempting to leave when the confrontation turned violent.[35]

Defendant notes that Plaintiff herself obviously recognizes her claim as a Worker's Compensation claim considering that she filed such a claim and has collected more than $13,000 in benefits over an extended period.[36] Finally, Defendant notes that courts can, and frequently do, grant summary judgment based on Worker's Compensation statutory immunity.[37] Thus, according to the Defendant, this Court should find that Circle K is immune from tort liability for an incident occurring in the course and scope of Plaintiff's employment—especially given that Plaintiff has been compensated for this same incident under her open workers' compensation claim.[38]

Plaintiff opposes Defendant's motion, but her brief is essentially unresponsive to the law and arguments presented by Defendant. Plaintiff claims Defendant's Motion for Summary Judgment "is pre-mature and must be denied."[39] She also contends that "discovery is still ongoing in this matter."[40] Yet, in the next sentence, the Plaintiff asserts that "discovery has not started at all," so "Plaintiff has not been able to gather most of the information needed to fully respond to the Defendant's Motion."[41] This contention is without merit, as will be discussed below.

Next, seemingly forgetting that she just asked the Court to allow discovery to proceed in this matter, Plaintiff claims this Court lacks subject matter jurisdiction because

---

[35] Rec. Doc. 10-2, p. 4.
[36] *Id.* at 5.
[37] *Id.* (citing *Carriere v. Chandeleur Energy*, 42 F.3d 642 (5th Cir. 1994) (per curiam) (finding that an employer was "immune from civil tort liability for the same injuries that are already covered and compensated under [the] workers' compensation claim.")).
[38] Rec. Doc. 10-2, p. 5.
[39] Rec. Doc. 13, p. 4.
[40] *Id.*
[41] *Id.*

the amount in controversy is less than $75,000.[42] This is a highly disingenuous attempt to avoid dismissal given that: 1) Plaintiff never filed a Motion to Remand this matter to state court; 2) she itemized her damages in initial disclosures as $150,000 plus an "undetermined" amount of special damages;[43] and 3) Plaintiff presents no evidence to demonstrate that her damages are below $75,000, and this argument contradicts all other pleadings in this matter.

### III. LAW & ANALYSIS

#### A. Motion for Summary Judgment

District courts should determine motions for summary judgment by viewing the evidence in the light most favorable to the party opposing the motion.[44] Put differently, a "court must draw all reasonable inferences in favor of the non-moving party, and it may not make credibility determinations or weigh the evidence."[45] Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, depositions, and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.[46] Summary judgment is also appropriate for cases of Worker's Compensation statutory immunity where there is no genuine issue of material fact.[47]

#### B. The Exclusivity of the LWCA – Negligence Claims

The LWCA provides immunity to an employer from negligence-based actions

---

[42] *Id.* at pp. 4–5.
[43] Rec. Doc. 14-4.
[44] *See Shackelford v. Deloitte & Touche, L.L.P.*, 190 F.3d 398, 409 (5th Cir. 1999).
[45] *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).
[46] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).
[47] *Carriere v. Chandeleur Energy*, 42 F.3d 642, 1994 WL 708709, at *6 (5th Cir. 1994).

brought by employees.[48] The Act expressly provides that the worker's compensation scheme "shall be exclusive over all other rights, remedies, and claims for damages…as against his employer, or any principal or any officer, director, stockholder, partner, or employee of such employer… ."[49] There can be no dispute that all negligence claims asserted by Plaintiff are barred by the LWCA as dictated by the Act and a wealth of jurisprudence.[50] In her Opposition, Plaintiff utterly ignores the LWCA and offers no jurisprudence to support any contrary argument regarding her negligence claims.

A general overview of the LWCA is relevant to the Court's analysis. The Western District of Louisiana in *Marceaux v. Lafayette City-Parish Consol. Government*[51] precisely explained the interplay between Louisiana tort law and the LWCA:

> Article 2315 is the seminal statute for Louisiana tort law. Article 2317 modifies Article 2315 by expressly making employers liable for the torts of their employees. Under the Louisiana Workers' Compensation Act, La. R.S. 23:1032, however, an employee injured while in the course and scope of his employment is generally limited to the recovery of workers' compensation benefits as his exclusive remedy against his employer and may not sue his employer in tort. The workers' compensation statute represents a compromise by which the employer and employee both surrender valuable rights, with the employee agreeing to accept the certainty of workers' compensation benefits as his exclusive remedy in exchange for surrendering his right to seek tort recovery from his employer.[52] This principle also immunizes employees against negligence claims by their co-workers.[53]

---

[48] La. R.S. 23:1021, *et seq*.
[49] La. R.S. 23:1032(A)(1)(a).
[50] *See Jackson v. Country Club of Louisiana, Inc.*, No. CV 20-452-SDD-EWD, 2021 WL 261538 (M.D. La. Jan. 26, 2021; *Bertaut v. Folger Coffee Co.*, No. CIVA 06-2437 GTP, 2006 WL 2513175, *3 (E.D. La. Aug. 29, 2006) (Zainey, J.) (dismissing plaintiff's claims against her employer for negligent infliction of emotional distress, failure to train and failure to supervise as they are barred by the Louisiana Workers' Compensation Statute; *Oramous v. Mil. Dep't*, No. CIV.A. 05-3677, 2007 WL 1796194, *9 (E.D. La. June 18, 2007) (Wilkinson, J.) ("Plaintiff's claims of negligent infliction of emotional distress and negligent failure to supervise are barred as a matter of law by the LWCA").
[51] 921 F.Supp.2d 605 (W.D. La. 2013).
[52] *Id.* at 644 (citing *Harris v. Wal–Mart Stores, Inc.*, 205 F.3d 847, 849 (5th Cir. 2000). *See, also, Benoit v. Turner Industries Group, L.L.C.*, 2011–1130 (La.01/24/12), 85 So.3d 629, 634).
[53] *Id.* (citing *White v. Monsanto Co.*, 585 So.2d 1205, 1208 (La.1991) ( "LSA–R. S. 23:1032 makes worker's compensation an employee's exclusive remedy for a work-related injury caused by a co-employee, except for a suit based on an intentional act.")).

Accordingly, all negligence claims asserted by Plaintiff against Defendant are barred by the LWCA, her exclusive remedy. As such, summary judgment is proper in favor of Defendant for any negligence claims asserted.

### C. LWCA and the Intentional Tort Exception

Plaintiff does not appear to allege any intentional tort claims against Defendant. Further, in the Court's view, Plaintiff's allegations against Defendant consist of garden-variety negligence.[54] Specifically, Plaintiff alleges that the door "lack[ed] security" and was "flims[y];" thus, "the premises were not properly secured for the employees, due to the area the business is located in," and "[e]mployees have previously complained to [Circle K]."[55] In other words, Plaintiff alleges that Circle K breached its duty to its employees by failing to properly secure the premises, which caused Plaintiff's injuries. This is textbook negligence. Although the Court sees no allegations to support an intentional tort claim against Defendant, it will nevertheless briefly address the applicable legal standard.

The LWCA provides the exclusive remedy for injury claims unless the injury results from an intentional act.[56] The intentional act/tort exception provides that an employee may sue in tort to recover beyond worker's compensation benefits when the injury is proximately caused by the employer's intentional tortious act.[57] "The words 'intentional act' mean the same as 'intentional tort' in reference to civil liability."[58] The exception requires that the person acting and causing injury must either: (1) "consciously desire[ ]

---

[54] *See* Rec. Doc. 10-4, ¶ 7.
[55] *Id.* at ¶¶ 6–7.
[56] La. R.S. § 23:1032(B) ("Nothing in this Chapter shall affect the liability of the employer, … to a fine or penalty under any other statute or the liability, civil or criminal, resulting from an intentional act.").
[57] *Reeves v. Structural Pres. Sys.*, 98-1795 (La. 3/12/99), 731 So.2d 208, 210; La. R.S. § 23:1032(b).
[58] *Bazley v. Tortorich*, 397 So.2d 475, 480 (La. 1981).

the physical result of his act, whatever the likelihood of that result happening from his conduct", or (2) "know[ ] that the result is substantially certain to follow from his conduct, whatever his desire may be as to that result."[59] The focus is on the consequences of the act rather than the act itself: "Only where the actor entertained a desire to bring about the consequences that followed or where the actor believed that the result was substantially certain to follow has an act been characterized as intentional."[60]

A plaintiff's burden "for showing the elements of an employer's intentional act within the meaning of the statutory exception is exacting,"[61] "and Louisiana courts, as well as federal courts sitting in diversity, have consistently noted that the intentional act exception is to be narrowly interpreted."[62] As such, the standard for prevailing on a claim of intentional tort under Louisiana law is "extremely high."[63] "Even knowledge of a high degree of probability that injury will occur is insufficient to establish that the employer was substantially certain that injury would occur so as to impute intent to him within the intentional tort exception to the worker's compensation statute exclusive remedy provisions."[64] Therefore, "[s]ubstantial certainty requires more than a reasonable probability that an injury will occur; this term has been interpreted as being equivalent to inevitable, virtually sure and incapable of failing."[65]

---

[59] *Id*. at 481; *see also White v. Monsanto Co.*, 585 So.2d 1205, 1208 (La. 1991); *Reeves,* 731 So.2d at 211.
[60] *White*, 585 So.2d at 1208.
[61] *Hodges v. The Mosaic Co.,* No. 05-5201, 2007 WL 2008503, at *4 (E.D. La. July 6, 2007).
[62] *Chiasson v. Hexion Specialty Chemicals, Inc.*, No. 11-0959, 2012 WL 3683542, at *6 (E.D. La. Aug. 27, 2012)(citing *e.g., Reeves*, 731 So.2d at 211-12 (citations omitted); *Cole v. State, Dep't of Public Safety & Corrections*, 2001-2123 (La. 9/4/02), 825 So.2d 1134, 1140-41; *Snow v. Lenox Int'l*, 27,533 (La.App. 2 Cir. 11/1/95), 662 So.2d 818, 820; *Rogers v. La. Dept. of Corrections*, 43,000 (La.App. 2 Cir. 4/30/08), 982 So.2d 252, 259, *writ denied*, 992 So.2d 931 (La. 2008); *Bridges v. Carl E. Woodward, Inc.*, 94-2675 (La.App. 4 Cir. 10/12/95), 663 So.2d 458, *writ denied*, 666 So.2d 674 (La. 1996); *Guillory v. Dorntar Indus., Inc.*, 95 F.3d 1320 (5th Cir. 1996); *Dark v. Georgia-Pacific Corp.,* 176 Fed. App'x 569 (5th Cir. 2006)).
[63] *Wilson v. Kirby Corporation*, No. 12-0080, 2012 WL 1565415, at *2 (E.D. La. May 1, 2012).
[64] *Id*. (citing *King v. Schulykill Metals Corporation*, 581 So.2d 300, 303 (La.App. 1 Cir. 1991)).
[65] *Id*. (quoting *King*, 581 So.2d at 302 (internal citations omitted)).

"Even if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering the claimant to perform an extremely dangerous job, or willfully failing to furnish a safe place to work, this still falls short of the kind of actual intention to injure that robs the injury of accidental character."[66] Mere knowledge and appreciation of risk alone do not constitute intent.[67] Furthermore, even an employer's knowledge that a situation is dangerous does not give rise to substantial certainty that injury will result.[68] "[B]elieving that someone may, or even probably will, eventually get hurt if the workplace practices continue does not rise to the level of an intentional act, but instead falls within the range of negligent acts that are covered by workers' compensation."[69] Moreover, even knowledge that similar injuries have occurred in the past does not establish that injury is substantially certain to occur in the future,[70] and violations of safety standards are generally insufficient to fulfill the substantial certainty requirement.[71] An employer's failure to properly train an employee is insufficient to maintain an intentional tort claim,[72] as is the failure to use safety equipment by an employer.[73] Likewise, "actions which lead to a

---

[66] *Reeves*, 731 So.2d at 210 (quotation omitted); *see also Micele v. CPC of Louisiana, Inc.*, 98-0044 (La.App. 4 Cir. 3/25/98), 709 So.2d 1065 (noting that courts in Louisiana "have cautioned that the intentional tort exception should be narrowly construed, holding that mere knowledge and appreciation of a risk does not constitute intent; reckless or wanton conduct, gross negligence, disregard of safety regulations or the failure to use safety equipment by an employer does not constitute intentional wrongdoing") (citations omitted)).

[67] *Williams v. Gervais F. Favrot Co.*, 573 So.2d 533 (La.App. 4 Cir. 1991), *writ denied*, 576 So.2d 49 (La. 1991).

[68] *Id.* (citing *Marino v. Martin's Oil Country Tubular, Inc.*, 931 So.2d 1089, 1090 (La. 2006) (citing *Armstead v. Schwegmann Giant Super Markets, Inc.*, 618 So.2d 1140 (La.App. 4 Cir. 1993), *writ denied*, 629 So.2d 347 (La. 1993)); *see also Guillory*, 95 F.3d at 1327 ("The substantial certainty test is satisfied when an employer consciously subjects an employee to a hazardous or defective work environment where injury to the employee is nearly inevitable.").

[69] *Dark*, 176 Fed. App'x at 571 (quoting *Reeves*, 731 So.2d at 211-12).

[70] *Snow*, 662 So.2d at 820.

[71] *Reeves,* 731 So.2d at 211.

[72] *See, e.g., Rogers*, 982 So.2d at 258-59; *Armstead*, 618 So.2d at 1143; *Carr v. Spherion*, No. 08-0326, 2009 WL 455408, at *9-10 (W.D. La. Jan. 28, 2009).

[73] *DelaHoussaye v. Morton Intern. Inc.*, 300 Fed. App'x. 257, 258, (5th Cir. 2008), citing *Micele*, 709 So.2d

'high probability' of injury do not rise to the level of substantial certainty, and even where acts or omissions constitute gross negligence, the substantial certainty exception is not met."[74]

In opposing Defendant's motion, Plaintiff fails to mention the intentional tort exception to the LWCA, much less articulate facts that would support this exception. Additionally, as discussed above, Plaintiff has presented no summary judgment evidence to demonstrate a genuinely disputed material fact on this issue. Accordingly, summary judgment is proper in favor of Defendant on any intentional tort claims that could be inferred from Plaintiff's Complaint.

### D.    Need for Discovery

Plaintiff maintains she needs discovery to properly oppose Defendant's motion. The Court is unpersuaded. Based on the undisputed facts and Plaintiff's own allegations in her Complaint, Plaintiff's alleged injuries arose out of and during her employment with Circle K.[75] It is also undisputed that Plaintiff has had an open and ongoing worker's compensation claim with Circle K throughout this litigation.[76] Further, it is undisputed that Plaintiff alleges that Defendant's culpable conduct is that the Circle K manager knew of the "flimsiness of the door" and was therefore aware that the "premises were not properly secured for the employees."[77] These facts alone are sufficiently dispositive that the Court can decide this issue as a matter of law.

---

at 1068.
[74] *Chaisson,* at *6, quoting *Guillory*, 95 F.3d at 1327-28 (finding that even where some employees and supervisors were aware that several forks had detached from forklifts and some employees knew that subject forklift had fallen off, the evidence established only, at best, negligence).
[75] Rec. Doc. 10-4, ¶¶ 3–7; Rec. Doc. 10-1, ¶¶ 1–2.
[76] Rec. Doc. 13-1, ¶ 2; Rec. Doc. 10-1, ¶ 3.
[77] Rec. Doc. 10-4, ¶¶ 5–7 ("Petitioner avers that the premises were not properly secured for the employees, due to the area the business is located in. Employees have previously complained to the company.").

Moreover, in correspondence between counsel, Defendant's counsel memorialized a prior conversation with Plaintiff's counsel. Defendant wrote: "We agreed the best court of action is for Circle K to file a motion/exception on this issue now so that we can get a judicial determination *before spending time and resources on fact discovery*."[78] This correspondence went further and specifically requested that Plaintiff notify Defendant if she "*wish[ed] to engage in discovery* prior to Circle K filing its motion/exception."[79] Plaintiff's counsel acknowledged receipt and review of this letter.[80]

Under a pleading standard, a plaintiff is not permitted to use the discovery process as a fishing expedition in the hopes of uncovering actionable conduct. Indeed, the Supreme Court has held that, although Rule 8 no longer requires hyper-technical pleading, "it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."[81] Thus, "a plaintiff cannot engage in discovery in an attempt to obtain facts that support a currently baseless claim."[82] "Discovery is not intended as a fishing expedition permitting the speculative pleading of a case first and then pursuing discovery to support it; the Plaintiff must have some basis in fact for the action."[83] "The discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable without discovery, **not to find out if it has any basis for a claim**."[84]

---

[78] Rec. Doc. 14-2 (emphasis added).
[79] *Id.* (emphasis added).
[80] Rec. Doc. 14-3.
[81] *Iqbal*, 556 U.S. at 678-79.
[82] *Lee v. Ard*, 2017 WL 5349493, at *6 (M.D. La. Nov. 13, 2017)(internal quotation marks omitted).
[83] *Russell v. Choicepoint Services, Inc.*, 302 F.Supp.2d 654, 671 (E.D. La. 2004)(quoting *Zuk v. Eastern Pa. Psychiatric Inst. of the Med. College*, 103 F.3d 294, 299 (3d Cir.1996)(internal quotation marks omitted)).
[84] *Id.* (quoting *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1327 (citing *Netto v. Amtrak*, 863 F.2d 1210, 1216 (5th Cir.1989))(internal quotation marks omitted)(emphasis added)).

Since this matter is at the summary judgment procedural posture, Plaintiff could have filed a Rule 56(d) request for discovery. To the extent the Court might interpret her Opposition as seeking such relief, it still fails because such a motion "must demonstrate to the court with reasonable specificity how the requested discovery pertains to the pending summary judgment motion. A nonmovant must identify with specificity a fact or facts that will likely reveal a genuine material fact dispute and how proposed discovery will likely lead to that triable fact."[85]

A party's failure to either allege with specificity how further discovery will reveal genuine issues of material facts or to prove their diligence in seeking discovery is fatal to a request for continuance of discovery. A party cannot extend discovery or avoid summary judgment by merely alleging additional discovery is needed.[86] Parties may not "simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts."[87] A party must show *how* the additional discovery will produce information as well as *why* that information will create a genuine issue of material fact. The Fifth Circuit analyzed the "reasonable specificity" requirement for continuance of discovery by asking how the requested discovery would influence the outcome of parties' pending summary judgment motion, holding that a plaintiff's failure to indicate how facts sought in further discovery will prove the plaintiff's burden fails the reasonable specificity standard.[88] To the extent Plaintiff seeks discovery to respond to Defendant's summary judgment motion, she has failed to satisfy the applicable standard.

---

[85] *Lewis v. Eye Care Surgery Center, Inc.*, No. 21-475-SDD-RLB, 2023 WL 6966067, at *2 (M.D. La. Oct. 20, 2023).
[86] *Brown v. Mississippi Valley State Univ.*, 311 F.3d 328, 333, n. 5 (5th Cir.2002).
[87] *Adams v. Travelers Indem. Co. of Connecticut*, 465 F.3d 156, 162 (5th Cir. 2006).
[88] *Am. Fam. Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013).

E.     **Subject Matter Jurisdiction – Amount in Controversy**

As to Plaintiff's disingenuous claim that this Court lacks subject matter jurisdiction because the amount in controversy does not meet the $75,000 threshold, this argument is easily dispensed with. Plaintiff never filed a Motion to Remand this matter to state court. Plaintiff itemized her damages in her initial disclosures as $150,000 plus an "undetermined" amount of special damages.[89] Plaintiff presents no evidence to demonstrate the amount of damages she seeks, and it is obvious to the Court that Plaintiff raises this argument in an effort to avoid dismissal.[90]

IV.    **CONCLUSION**

For the reasons set forth above, Defendant's *Motion for Summary Judgment*[91] is GRANTED. Plaintiff's claims are dismissed with prejudice.

Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this  21st  day of ___August___, 2024.

_____
**SHELLY D. DICK
CHIEF DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA**

---

[89] Rec. Doc. 14-4.
[90] The Court notes that this argument could implicate Rule 11 sanctions.
[91] Rec. Doc. 10.